## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LUIS GARCIA,

      Plaintiff,

v.                                                                  Case No. 8:24-cv-1609-KKM-SPF

GEICO MARINE INSURANCE
COMPANY,

      Defendant.
_____

## ORDER

      Luis Garcia filed a claim with his insurer, GEICO Marine Insurance Company, when his boat burned up. After concluding that Garcia had failed to disclose all material facts when he applied for the insurance as required by federal law, GEICO Marine denied Garcia's claim and rescinded Garcia's marine policy. Garcia now seeks declaratory judgment that the rescission was unlawful. The parties both move for summary judgment. Because the marine insurance doctrine of *uberrimae fidei* required Garcia to affirmatively disclose his driving and claims history to GEICO Marine, and because no reasonable jury could conclude that he did so, I deny Garcia's motion for summary judgment and grant GEICO Marine's cross motion.

## I.    BACKGROUND

      In November 2022, Garcia applied for marine insurance for his Sea Hunt Gamefish with GEICO Marine "via telephone." Joint Statement of Undisputed

Facts (JSUF) (Doc. 40) ¶ 1. Spencer Gray, an insurance agent, took Garcia's call and input Garcia's information into GEICO Marine's system, which generated an insurance application. *Id.* ¶¶ 2–3; *see* Marine Ins. Application (Doc. 41-1 at 38–39). GEICO Marine does not have a recording of the phone call, and neither Garcia nor Gray signed the application. JSUF ¶¶ 4, 6, 14. After the call, GEICO Marine issued Garcia a marine insurance policy. *Id.* ¶ 7; *see* Policy (Doc. 41-1 at 40–63).

A fire destroyed Garcia's boat while it was sitting in a carport at Garcia's home in August 2023. JSUF ¶¶ 9–10, 13. After Garcia filed a claim, GEICO Marine ran an MVR Report for Garcia, which revealed a checkered driving history in the years just before his marine insurance application. *Id.* ¶ 12; *see* MVR Report (Doc. 43-1 at 12–17). After an Examination Under Oath, GEICO Marine denied Garcia's claim and "rescinded [his] Policy to the date of its inception . . . due to material facts that were misrepresented and/or omitted to GEICO Marine at the time of [his] application for insurance." JSUF ¶ 19; Rescission Letter (Doc. 41-1 at 64–65). GEICO Marine then issued Garcia a refund of his premiums. JSUF ¶ 20.

Garcia sued GEICO Marine in state court seeking declaratory judgment that GEICO Marine's rescission of the policy was wrongful and that Garcia is entitled to whatever coverage is available under his policy. Compl. (Doc. 1-1) at 3–4. GEICO Marine removed the action to this Court. Notice of Removal

(Doc. 1). Both parties move for summary judgment. Garcia MSJ (Doc. 42); GEICO MSJ (Doc. 43).

## II.   LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate a lack of genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present evidentiary materials (e.g., affidavits, depositions, exhibits, and so on) demonstrating that there is a genuine issue of material fact, which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court reviews the record evidence as identified by the parties and draws all legitimate inferences in the nonmoving party's favor. *See Sconiers v.*

*Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020). Here, to the extent that the record is disputed or capable of multiple inferences, the Court draws them for the nonmovant.

## III. ANALYSIS

These cross motions for summary judgment present the same three questions. First, did federal maritime law require Garcia to affirmatively disclose all material facts related to the risk of insuring him? Second, if so, was Garcia's driving and claims history material? Third, if it was, did Garcia disclose it to GEICO Marine?

Federal maritime law required Garcia to affirmatively disclose his driving history and claims history, which was material to GEICO Marine's decision to insure his boat. Based on the evidence presented, the only reasonable inference is that Garcia did not disclose that history. GEICO Marine is therefore entitled to summary judgment.

### A. The *Uberrimae Fidei* Doctrine Applies, So Garcia Had a Duty to Affirmatively Disclose All Material Facts

To start, the parties dispute what law applies to Garcia's policy. Garcia says that the maritime-law doctrine of *uberrimae fidei* does not apply because (1) "the seaworthiness of his vessel was never in question" and (2) "there is no connection between Garcia's driving history and the loss in this case." Garcia

MSJ at 8–10. GEICO Marine disagrees. GEICO MSJ at 10–14; GEICO Resp (Doc. 46) at 5–9. GEICO Marine is right that *uberrimae fidei* applies.

Federal maritime law governs marine insurance contracts. *GEICO Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1139 (11th Cir. 2019).[1] "It is well-settled that the marine insurance doctrine of *uberrimae fidei* is the controlling law of this circuit," *HIH Marine Servs., Inc. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000), and it applies "even in the face of contrary state authority," *Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 695 (11th Cir. 1984).

The *uberrimae fidei* doctrine requires an insured to act in the "utmost good faith" when seeking marine insurance. *AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296, 1303 (11th Cir. 2015). An insured must " 'fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk,' and '[t]he duty to disclose extends to those material facts not directly inquired into by the insurer.' " *Quintero v. Geico Marine Ins. Co.*, 983 F.3d 1264, 1271 (11th Cir. 2020) (quoting *HIH Marine*, 211 F.3d at 1362). This duty extends to "all material facts that are 'within or ought to be within, the knowledge of one

---

[1] Were this not the general rule, though, the policy contains a choice-of-law clause providing that "the policy is governed by United States federal admiralty law and maritime law." Policy § V(M); *see Se. Floating Docks, Inc. v. Auto-Owners Ins. Co.*, 82 So. 3d 73, 80 (Fla. 2012) ("An agreement between parties to be bound by the substantive laws of another jurisdiction is presumptively valid, and this Court will enforce a choice-of-law provision unless applying the chosen forum's law would contravene a strong public policy of this State.").

party, and of which the other party has no actual or presumptive knowledge.' " *Id.* (quoting *Steelmet*, 747 F.2d at 695). The failure to disclose a material fact—even because of "mistake, accident, or forgetfulness," *HIH Marine*, 211 F.3d at 1363 (quoting *Steelmet,* 747 F.2d at 695)—"render[s the] insurance policy void ab initio," *AIG Centennial*, 782 F.3d at 1303.

The *uberrimae fidei* doctrine applies here and required Garcia to affirmatively disclose all material facts that are, or ought to be, within his knowledge. *See Quintero*, 983 F.3d at 1271. While Garcia argues that the *uberrimae fidei* doctrine required him to disclose only facts related to whether his boat "was unseaworthy [or] improperly maintained" or that otherwise "related to its physical condition or use on the water," Garcia MSJ at 8, that argument properly goes to materiality, not the applicable law. Garcia also cites no authority supporting his theory that whether the *uberrimae fidei* doctrine applies depends on the nature of the loss. *See id.* Indeed, it would be odd to conclude that whether an insurance policy is void ab initio for failure to disclose a material fact depends on whether, and how, a loss occurred. More, courts in this circuit have applied *uberrimae fidei* to omissions related to driving records. *See, e.g.*, *Clear Spring Prop. & Cas. Co. v. Astonbluwaves LLC*, No. 22-21854-CIV, 2024 WL 665673, at \*5 (S.D. Fla. Jan. 24, 2024), *report and recommendation adopted,* No. 22-21854-CV, 2024 WL 664136 (S.D. Fla. Feb. 16, 2024); *Great Lakes Reinsurance (UK) PLC v. Amaro*, No. CV 15-20974-CIV,

6

2016 WL 4808703, at *2 (S.D. Fla. Feb. 12, 2016); *Great Lakes Reinsurance PLC v. Barrios*, No. 08-20281-CIV-UNGARO, 2008 WL 6032919, at *5 (S.D. Fla. Dec. 10, 2008).

Because the *uberrimae fidei* doctrine thus applies, Garcia had a duty to disclose to GEICO Marine "all material facts that are 'within or ought to be within, [Garcia's knowledge], and of which [GEICO Marine] ha[d] no actual or presumptive knowledge.' " *Quintero*, 983 F.3d at 1271 (quoting *Steelmet*, 747 F.2d at 695).[2]

## B. Garcia's Driving and Claims History is Material

Garcia does not meaningfully dispute that his driving and claims history was material to GEICO Marine's decision to insure him.

*Uberrimae fidei*'s materiality standard is not strict. "A misrepresentation [or omission] is material if 'it might have a bearing on the risk to be assumed by the insurer.' " *HIH Marine*, 221 F.3d at 1363 (quoting *Northfield Ins. Co. v. Barlow,* 983 F. Supp. 1376, 1380 (N.D. Fla. 1997)); *id.* at

---

[2] Even if the *uberrimae fidei* doctrine did not apply, the policy provides the following:

> **Fraud and Concealment**
> This policy is void if any insured or any insured's agent, at any time and regardless of intent, conceals, misrepresents or fails to disclose any material fact regarding this insurance, any application for insurance, the insured boat or any claim made under this policy.

Policy § V(I) (emphasis omitted). Other courts have recognized that similar provisions "set[] forth a standard for voiding the contract consistent with the doctrine of *uberrimae fidei.*" *Great Lakes Ins. SE v. Sunset Watersports, Inc.*, 570 F. Supp. 3d 1252, 1263 (S.D. Fla. 2021) (collecting cases); *see* GEICO MSJ at 21–22.

1363–64 ("[M]ateriality in the marine insurance context is broadly defined as anything that could influence the insurer's evaluation of the risk presented by the insured."). Put another way, a fact is material if "it could 'possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk.' " *AIG Centennial*, 782 F.3d at 1303 (quoting *Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.,* 795 F.2d 940, 942–43 (11th Cir. 1986)).

To the extent that Garcia challenges materiality, he does so by pointing out that "there is no connection between [his] driving history and the loss in this case," as a fire destroyed his boat while it was parked at his home. Garica MSJ at 9; *see id.* at 8 ("[W]hat is material about a driving record in a fire loss?" (quoting Miller Aff. (Doc. 42-7) ¶¶ 11)). Yet a policy is void ab initio under *uberrimae fidei* if the prospective insured fails to "disclos[e] all facts material to a calculation of the insurance risk," not just those facts bearing on the actual loss. *Quintero*, 983 F.3d at 1271 (quoting *HIH Marine*, 211 F.3d at 1362–63); *cf. id.* ("[T]he doctrine of *uberrimae fidei* applies only when an insurer issues a policy, not when a policy is already in full force."). The *uberrimae fidei* doctrine is calculated to ensure that the insurer has a full picture of the risk that the insured presents when deciding whether to provide coverage. *See HIH Marine*, 211 F.3d at 1363–64 ("[M]ateriality in the marine insurance context is broadly defined as anything that could influence the insurer's evaluation of the risk presented by the insured. [T]he insurer . . . ha[s] the right to assess the risk

8

using accurate information on the identity of its insured and the use of the vessel." (citation omitted)). More, Garcia cites no authority suggesting that whether a policy is void ab initio based on a material omission turns on whether that omission was material to an actual loss.

Looking at the whole risk GEICO Marine assumed, Garcia's driving and claims history was material. GEICO Marine's underwriting policy provides that GEICO Marine "will not accept an owner or operator of any watercraft, if within the past (3) years, there have been: (i) More than three (3) violations, suspensions, or revocations per owner/ operator or five (5) per household[.]" Absalon Aff. (Doc. 43-1) ¶ 17 (quoting GEICO New Business/Reunderwriting Guidelines (Doc. 43-1 at 19–22) § 6(b)(I)); *see also id.* ¶ 19 ("GEICO Marine considers information pertaining to a prospective insured's driving record . . . to be material in determining whether to accept a potential insurance risk."). That policy is reasonable—a prospective insured's care in operating and maintaining a land-based motor vehicle is likely indicative of his care in operating and maintaining a boat. *See* Ray Rep. (Doc. 46-1) at 7 ("Over the years, it has been historically proven that there is a direct correlation between automobile driving habits and experience of the owner/operator of a vessel and his vessel operation."); *see also Amaro*, 2016 WL 4808703, at *2 (concluding that marine insurance applicant's omission of automobile violations was

material as a matter of law).[3] That Garcia had at least one moving violation and one automobile insurance claim in the three years before his marine-insurance application is thus material. *See* Garcia Examination Under Oath (EUO) (Doc. 41-2) 31:21–32:1 (admitting to one at least one careless driving violation); *id.* 19:9–20:21 (admitting to one automobile insurance claim shortly before Garcia bought his boat insurance); *see also* MVR Report (Doc. 43-1) at 12–18.

Garcia resists that conclusion by arguing that GEICO Marine already had access to his driving and claims history because he had a GEICO automobile policy. *See* Garcia MSJ at 11–12; Garcia Resp. (Doc. 45) at 8–9; *see also Quintero*, 983 F.3d at 1271 (explaining that the *uberrimae fidei* doctrine's duty to disclose extends to only those facts of which the insurer "has no actual or presumptive knowledge." (quoting *Steelmet*, 747 F.2d at 695)). Yet he presents no evidence that this is so. Instead, a GEICO Marine underwriting supervisor explains that GEICO Marine had no access to Garcia's driving or claims history:

> [A]t the time of Garcia's application call, GEICO Marine's agents/representatives did not have the ability to view and/ or verify any prospective insured's automobile insurance policy and

---

[3] Garcia seeks to distinguish *Amaro* because there the insured made "a very clear misrepresentation . . . on a paper application." Garcia Reply (Doc. 47) at 4. This difference is irrelevant to *Amaro*'s conclusion that an insured's driving history is material.

related information (to the extent same was held by GEICO Indemnity Company).

Absalon Aff. ¶ 20. While Garcia says in his own affidavit that he "assume[s] GEICO Marine had all of [his] driving history as [he has] been continuously insured by GEICO auto for many years," he does not claim to have any personal knowledge of how or if information is shared between GEICO entities. Garcia Aff. ¶ 4; *see also* Miller Aff. ¶ 12 (claiming "[GEICO] was in possession of L[uis] Garcia's driving record and claims history as he was already their insured" without distinguishing between GEICO entities). More, Garcia introduces no evidence that GEICO's auto division knew of his driving record, and he does not explain why its knowledge, if any, should be imputed to GEICO Marine. *Cf.* Absalon Aff. ¶ 21 (suggesting that Garcia's automobile insurer was "GEICO Indemnity Company"). While Garcia claims that "Gray testified that Geico's system automatically populated many of the fields on the Marine Insurance Application to begin with," implying that it pulls preexisting information about Garcia, that misreads Gray's testimony. Garcia Resp. at 9. Gray testified that a back-end system generates the application based on information Gray inputs. *See* Gray Dep. (Doc. 41-3) 32:2–20. This argument thus fails.

Because Garcia's claims and driving history was material, the *uberrimae fidei* doctrine required him to affirmatively disclose it to GEICO Marine. *See Quintero*, 983 F.3d at 1272 ("[M]ateriality 'can be decided as a matter of law if

11

reasonable minds could not differ on the question.' " (quoting *Woods v. Indep. Fire Ins. Co.*, 749 F.2d 1493, 1496 (11th Cir. 1985))).

### C. No Reasonable Jury Could Conclude That Garcia Disclosed His Driving and Claims History to GEICO Marine

The central question here is what Garcia disclosed to GEICO Marine's insurance agent, Gray, when he applied for marine insurance. Neither Garcia nor Gray remembers whether Garcia disclosed his driving and claims history. *See* Garcia EUO 34:21–35:15; Gray Dep. 30:11–16. And GEICO Marine does not have a recording of the call. *See* Def.'s Resp. to Pl.'s 1st Req. for Admis. (RFA) (Doc. 41-4) ¶ 9. The only evidence of what Garcia told GEICO Marine is thus circumstantial. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) ("Where the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the non-movant's claim rests.").

#### 1. GEICO Marine's Evidence Compels an Inference That Garcia Did Not Disclose His Claims and Driving History

GEICO Marine relies on the insurance application generated during Garcia's call with Gray to show what Garcia did not disclose. *See* GEICO MSJ at 15–17; GEICO Resp. (Doc. 46) at 9–12. GEICO Marine's system autogenerates the insurance application based on information input by GEICO's agents. Gray Dep. 32:4–20; Absalon Aff. ¶ 7 ("As questions are asked during the application call, the insurance agent/ representative inputs the

information supplied during the call into GEICO Marine's computer system, which in turn, generates a Marine Insurance Application."). Neither Gray nor Garcia had ever seen the application before this litigation, and Garcia did not sign it. Gray Dep. 32:2–5; Garcia EUO 14:23–24; RFA ¶ 1.

Two parts of the application are relevant here. First, the application says to "[l]ist any automobile or boating violations for the owner in the past 3 years." Marine Ins. Application at 1. Below that, the application has categories for "Speeding <20," "Speeding >20," "DUI/DWI," "Reckless Driving" and "Other Moving Violations." *Id.* For all five categories, for "# of Incidents" the application either reads "0" or is blank. *Id.* Below that, the application asks "[h]ave you had any boating or automobile claims, accidents, or losses in the past 3 years?" *Id.* The space for "No" is checked. *Id.*

In the absence of contrary evidence, the application compels the conclusion that Garcia did not disclose his driving and claims history to GEICO Marine. Based on the evidence, GEICO Marine's insurance agent inputs information into GEICO Marine's system as the applicant answers questions that the agent asks. *See* Absalon Aff. ¶ 5; Gray Dep. 32:2–20. The application thus reflects a contemporary recording of information given by Garcia to Gray at the time Garcia applied for marine insurance. As the application reflects that Garcia had no violations and no claims in the last three years—which is

not true—it suggests that Garcia did not disclose his past violations and claims to GEICO Marine as the *uberrimae fidei* doctrine requires.

### 2. Garcia's Arguments That the Application Does Not Support Summary Judgment Fail to Persuade

Garcia resists that conclusion by attacking the application's reliability and admissibility.

To start, Garica contends that no evidence suggests that Gray asked him about his driving and claims history when he called to apply. Garcia MSJ at 10, 13; Garcia Reply (Doc. 47) at 2; Garcia Resp. at 4–7. His argument is, in brief, that GEICO Marine's "corporate policy cannot substitute for proof of what occurred during the application process." Garcia Resp. at 4. In one sense, it is irrelevant whether Gray asked Garcia about his claims and driving history—Garcia had a duty to disclose it whether Gray asked or not. *See HIH Marine*, 211 F.3d at 1362 ("The duty to disclose extends to those material facts not directly inquired into by the insurer."). To the extent that whether Gray asked about Garcia's claims and driving history affects the application's reliability, evidence of GEICO Marine's general practice supports the application's reliability absent contrary evidence. *See Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1078 (11th Cir. 2003) ("An employer's evidence of its routine practices is relevant to prove that its conduct at a particular time conformed to its routine practices." (citing FED. R. EVID. 406)).

14

Garcia says he has contrary evidence in his own affidavit, in which he claims he "was not asked any questions regarding traffic violations or claims." Garcia Aff. ¶ 2. GEICO Marine rightly objects that this statement should be disregarded under the sham-affidavit doctrine. *See* GEICO Resp. at 12 n.5. At summary judgment, a court may disregard a statement in an affidavit "as a matter of law when, without explanation, it flatly contradicts his or her own prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1306–07 (11th Cir. 2016); *see also Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). Garcia testified under oath in October 2023 that he did not remember whether Gray asked him about his driving record. *See* Garcia EUO 34:25–35:15. In his May 2025 affidavit, though, he now states definitively that he "was not asked any questions regarding traffic violations or claims." Garcia Aff. ¶ 2. Absent any explanation for this late recollection, Garcia's affidavit is properly discarded. *See Furcron*, 843 F.3d at 1306–07. That distinguishes this case from those that Garcia cites in which a party denied under oath that events took place in accord with a company's standard practice. *See* Garcia Resp. at 5–6 (citing *Ragland v. IEC US Holdings, Inc.*, No. 6:22-CV-995-WWB-LHP, 2023 WL 4749546 (M.D. Fla. Feb. 21, 2023), *report and recommendation adopted,* No. 6:22-cv-995-WWB-LHP, 2023 WL 4749363 (M.D. Fla. July 10, 2023), *aff'd,* No. 23-12389, 2024 WL 340849 (11th Cir. Jan.

30, 2024) and *Schoendorf v. Toyota of Orlando*, No. 608-cv-767-ORL-19DAB, 2009 WL 1075991 (M.D. Fla. Apr. 21, 2009)).

Garcia next attacks the application's admissibility. Garcia Reply at 4–7; *see* FED. R. CIV. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Garcia first claims that the application is "straightforward hearsay." Garcia Reply at 5. Not so. GEICO Marine does not seek to present the application for "the truth of the matter asserted"—that is, that Garcia had no prior driving violations or claims. FED. R. EVID. 801(c)(2). Instead, GEICO Marine relies on the application to support the inference that Garcia told Gray that he did not have any violations or claims, or at least that Garcia did not disclose any violations or claims. *See* GEICO MSJ at 16–17; GEICO Resp. at 9–12. Because "[s]tatements that are not offered for the truth of the matter asserted are not hearsay," the application is not inadmissible hearsay. *United States v. Daniels*, 91 F.4th 1083, 1096 (11th Cir. 2024), *cert. denied*, 144 S. Ct. 2592 (2024).

Garcia next claims that GEICO Marine cannot authenticate the application. Garcia Reply at 6–8 ("The application is unsigned, unauthenticated, and uncorroborated by testimony."); *see United States v. Woods*, 684 F.3d 1045, 1062 (11th Cir. 2012) ("[A]n 'item' of evidence is not admissible at trial unless and until it is properly authenticated by evidence

16

'sufficient to support a finding that the item is what the proponent claims.' " (quoting FED. R. EVID. 901(a))). A GEICO Marine underwriter explains in her affidavit based on her "personal knowledge" that the application in the summary judgment record is "[a] true and correct copy of the Marine Insurance Application generated as a result of Garcia's application call on November 16, 2022." Absalon Aff. ¶¶ 3, 7. And Gray explained that GEICO Marine's system generates the application after he inputs information provided by an applicant during a call. *See* Gray Dep. 32:2–20. Garcia fails to explain why this testimony would be insufficient to authenticate the application at trial, especially as authentication is a low hurdle to clear.

Finally, Garcia contends that the application is unreliable because certain fields in the form are not filled out. *See* Garcia Reply at 5. Yet Gray explained that "the entire application does not get filled out, just what we ask." Gray Dep. 26:21–24. While Gray testified that two blank fields on the application should be filled in—the fields for other GEICO policies and driver's license number—he also explained that on his end of the system, those fields were filled. Gray Dep. 27:16–28:12, 32:16–33:8; *see* Marine Ins. Application at 1.[4] These discrepancies are thus not, as Garcia contends, "unexplained," Garcia

---

[4] In the version of the application filed with the Joint Statement of Material Facts, the field for "Owner's Valid Drivers License" is filled with x's like the fields for "Owner's Date of Birth" and "Owner's Social Security #," suggesting redaction. Marine Ins. Application at 1.

Reply at 5, and there is no evidence that the information Gray input for Garcia's driving and claims history was inaccurate or that the application did not reflect what Gray input. Garcia has thus not provided an evidentiary basis on which a reasonable jury could doubt the application's accuracy.

Garcia therefore fails to undermine the application, the only piece of evidence indicating what Garcia said during his application phone call.

## IV.    CONCLUSION

Under the *uberrimae fidei* doctrine, Garcia had a duty to affirmatively disclose all material facts to GEICO Marine, even if GEICO Marine did not inquire into them. Garcia's driving and claims history was material. And the only piece of evidence of what Garcia disclosed during his application call—the application itself—supports an inference the Garcia did not disclose his driving and claims history. No evidence supports a contrary inference. A reasonable jury would thus be compelled to conclude that the policy is void ab initio under the *uberrimae fidei* doctrine and that GEICO Marine lawfully rescinded the policy to the date of its inception.

The following is therefore **ORDERED:**

1.    Plaintiff Luis Garcia's Motion for Summary Judgment (Doc. 42) is **DENIED**.

2.    Defendant GEICO Marine Insurance Company's Motion for Summary Judgment (Doc. 43) is **GRANTED**.

3.    The Clerk is directed to **ENTER JUDGMENT**, which shall read:
"Judgment is entered against Luis Garcia and in favor of GEICO
Marine Insurance Company."

4.    The Clerk is further directed to **TERMINATE** any pending
motions or deadlines and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on October 2, 2025.

Kathryn Kimball Mizelle
United States District Judge